**PORTER, Adm'r, OPA, v. GRAY.**
**GRAY v. PORTER, Adm'r, OPA.**

**No. 11084.**

Circuit Court of Appeals, Ninth Circuit.
Nov. 16, 1946.

George Moncharsh, Deputy Adm. for Enforcement, David London, Director, Litigation Div., Albert M. Dreyer, Chief Appellate Branch, Harold Craske, Atty., OPA, all of Washington, D. C., for appellant.

Cosgrove, Terhune & Schlosstein, of Seattle, Wash., for appellee.

Before DENMAN, BONE and ORR, Circuit Judges.

DENMAN, Circuit Judge.

The administrator appeals from a judgment awarding him the exact amount of overcharges in the sale of red cedar shingles found by the district court to be due because Gray had overcharged in violation of Section 1381.4 a and b of the Price Regulations and a later provision 1381.4 c. The overcharges are later considered and found to have been correctly adjudicated. The evidence shows that Gray has not maintained his burden of proof that his violations of either order were not wilful. On the contrary, the court finds the specific facts constituting willfulness in violating Section 1381.4 c. Bowles v. Glick Bros. Lumber Co., 9 Cir., 146 F.2d 566, certiorari denied 325 U.S. 877, 65 S.Ct. 1554, 89 L. Ed. 1994; Bowles v. Franceschini, 1 Cir., 145 F.2d 510; Speten v. Bowles, 8 Cir., 146 F.2d 602, certiorari denied 324 U.S. 877, 65 S.Ct. 1023.

█ The Administrator assigns error (a) that the district court confined the damages to the actual overcharges and (b) that it failed to assess as a penalty anything in excess of the overcharges, while it should have so assessed exactly three times their total.

The language of the statute is "205(e) * * * In such action, the seller shall be liable for reasonable attorney's fees and costs as determined by the court, plus whichever of the following sums is the greater: (1) Such amount not more than three times the amount of the overcharge, or the overcharges, upon which the action is based as the court in its discretion may determine, or (2) an amount not less than $25 nor more than $50, as the court in its discretion may determine: Provided, however, That such amount shall be the amount of the overcharge or overcharges or $25, whichever is greater, if the defendant proves that the violation of the regulation, order, or price schedule in question was neither wilfull nor the result of failure to take practicable precautions against the occurrence of the violation * * *." 50 U.S.C.A.Appendix, § 925(e).

On the face of the statute there is no mandate to charge treble damages in every case in which there is an overcharge willful in character. The liability is "not more than three times the amount of the overcharge."

We agree with the Seventh Circuit's decision in Bowles v. Krodel, 149 F.2d 398, 400, that, in the event the price violator does not show both absence of willfulness and the presence of care to prevent the occurrence of violations, the court has the discretion to determine the amount of the judgment in excess of the exact amount of the overcharges.

█ However, the District Court's statement, that "When this case was tried the law with respect to the damages recoverable by plaintiff was different than it now is. There is nothing mandatory now as to treble damages. I am satisfied that treble damages should not be imposed," indicates that it may have refused any punitive damages at all under the impression that the penalty had to be treble damages or nothing. Such an error seems possible, for Gray's second series of violations of price control regulations are affirmatively shown to have occurred after he had sought and been denied approval of his scheme of violation. We are hence remanding the case with instructions to the District Court to consider increasing the amount adjudged by such added amount as it in its sound judicial discretion [1] deems proper, in view of the

---

[1] Bowles v. Goebel, 8 Cir., 151 F.2d 671, 674.

violator's found willful disregard of the ruling of the Price Administrator on his proposed scheme of violation and other misconduct.

Cross-appellant Gray had developed a wholesaler's business in red cedar shingles. The Administrator took practically all possibility of profit out of the business by the following regulations:

Section 1381.1 in pertinent part reads as follows:

"Maximum prices for red cedar shingles. On and after June 29, 1942, regardless of any contract, agreement, or other obligation,

"(a) Where the shipment originates at the mill rather than at a distribution yard, no person shall sell or deliver red cedar shingles, and no person shall buy or receive red cedar shingles in the course of trade or business, at prices higher than the maximum prices set forth in Appendix A, incorporated herein as § 1381.11; and

"(b) Where the shipment originates in a foreign country, no person shall sell or deliver red cedar shingles and no person shall buy or receive red cedar shingles in the course of trade or business, at prices higher than the maximum prices set forth in Appendix A, incorporated herein as § 1381.11; and

"(c) No person shall agree, offer, solicit or attempt to do any of the foregoing."

Section 1381.4 as originally issued read as follows: "Evasion. (a) The price limitations set forth in this Maximum Price Regulation No. 164 shall not be evaded, whether by direct or indirect methods, in connection with an offer, solicitation, agreement, sale, delivery, purchase or receipt of or relating to red cedar shingles, alone or in conjunction with any other commodity or by way of commission, service, transportation, or other charge, or discount, premium, or other privilege, or by tying agreement, or other trade understanding, or otherwise * * *."

■ The evidence amply supports the court's findings showing a violation of these regulations, as follows:

" * * * That defendant attempted to evade Maximum Price Regulation 164 by designating the payments received in excess of the mill ceiling price as commissions paid to defendant for the service of procuring red cedar shingles for them as a purchasing agent. To carry out said scheme, defendant established a so-called procurement division, under which the customer forwarded to defendant in advance of any shipment, a remittance equal to the ceiling price of a carload of shingles plus a fee of One Hundred Dollars ($100.00) per car. That defendant maintained a separate bank account to contain said payments, designated as an agency account. That defendant would purchase the shingles on his own credit and consign any specific car to whatever customer he wished and pay for the car by drawing a check against the so-called agency account. That at all times defendant maintained dominion and control over said shingles by giving specific instructions to the manufacturing mill as to the name and location of the customer to whom they were to be shipped, and as consignor. That the defendant, insofar as it was possible, concealed the name of the purchaser from the shingle mill and concealed the name of the supply mill from the retail lumber yard customers. That defendant, to give color to the transaction as a bona fide employment or agency relationship, requested the retail yard customers to list him on their pay rolls as an employee and to pay social security tax accordingly, and the customers did so.

"V.

"The Court finds that the relationship between defendant and his customers was that of vendor and vendee, and that the purported relationship by which defendant was an employee or agent of the retail lumber yards to buy shingles was a device to evade Maximum Price Regulation 164."

Subsequently the Administrator amended red shingle regulation 1381.4 by the addition of the following paragraph: "(c) It is unlawful for any person to charge, receive or pay a commission for the service of procuring, buying, selling or locating shingles, or for any related service (such as 'expediting') which does not involve actual physical handling of shingles, if the commission plus the purchase price results in a total payment by the buyer of shingles

which is higher than the maximum price of the shingles. For purposes of this regulation, a commission is any service charge or payment which is figured either directly or indirectly on the basis of the quantity, price or value of the shingles in connection with which the service is performed."

Gray again attempted to restore his wholesale business by having himself employed on a purported salary as agent serving the shingle buyer in procuring shingles for him. On this the District Court found

" * * * That in essence the plan proposed was that defendant should represent not to exceed fifty (50) shingle buying retail yards, that he should be compensated at the rate of $100.00 per month by each of said yards, irrespective of the quantity of shingles supplied. That each customer would advance his own funds for the purchase of shingles, which funds would be deposited in an account designated 'Trust Account' commingled with such accounts from other depositors. That each of said deposits would cover the full purchase price of a carload of shingles. That defendant would undertake to ship one car of shingles to each customer every three to five weeks * * *.

"VIII.

"The Court finds that in fact defendant's method of operation during this period was to charge each customer substantially the sum of One Hundred Dollars ($100.00) per car of shingles shipped in excess of the ceiling price for the shipment. That defendant attempted to skirt the price regulation by calling the transaction an employment for the purpose of purchasing shingles and attempted to make it appear that his compensation did not depend upon the volume of shingles shipped but was rather a monthly salary. That in fact defendant had dominion and control of the shingles shipped, designating what customer should get any particular car of shingles and issuing the corresponding shipping instructions. That this practice constituted a commission for the service of procuring shingles, related to the quantity, price and value of the shingles in connection with which the service was performed, and an evasion of Maximum Price Regulation 164, as amended."

There are facts from which the above findings may be inferred.

We affirm the judgment for the amounts of the overcharges and remand the case to the District Court with instructions to determine, in accord with the above opinion, what, if any, increase in damages should be awarded.