**PORTER v. SUNSHINE PACKING COR-
PORATION OF PENNSYLVANIA.**

Civ. A. No. 2869.

United States District Court
W. D. Pennsylvania.

Oct. 25, 1948.

W. Wendell Stanton, Asst. U. S. Atty., of Pittsburgh, Pa., for plaintiff.

S. Y. Rossiter, of Erie, Pa., for defendant.

GOURLEY, District Judge.

This is an action by the Administrator of the Office of Price Administration against the Sunshine Packing Corporation of Pennsylvania, brought on behalf of the United States for treble damages pursuant to the provisions of Section 205(e) of the Emergency Price Control Act of 1942, Pub. Law 421, 77th Cong., 2nd Sess., 56 Stat. 23, as amended by Public Law 729, 77th Cong., 2nd Sess., Ch. 578, 56 Stat. 765, 50 U.S.C.A. Appendix, §§ 925(e), 961 et seq. Jurisdiction of this action is conferred upon this Court by Sections 205(c) and 205(e) of said Act, hereinafter referred to as "the Act".

The action was tried before a jury and on September 25, 1946, a verdict was returned in favor of the Administrator and against the Sunshine Packing Corporation of Pennsylvania in the amount of $7,194.-16. In connection with the overcharges which the jury found to exist and upon which the verdict was based, it was found that although the actions of the defendant were not willful, the overcharges were the result of the failure of the defendant to exercise practicable precautions to comply with the ceiling prices as provided by the Maximum Price Regulations which were involved. The Court entered judgment on said verdict in favor of the government and against the defendant in the amount of $14,388.82, which was double the amount of the overcharges. The matter is before the Court on motion of the defendant requesting the entry of judgment non obstante veredicto, or that the verdict and judgment entered thereon be set aside. The reasons assigned therefor are as follows:

1. That the Court should have directed a verdict for the defendant as to crab apple juice for the reason that the ceiling price thereon should have been computed under Maximum Price Regulation No. 233 and not under General Maximum Price Regulation.

2. That as to strawberry juice, black raspberry juice, and currants the Court

erred in not directing a verdict for the defendant for the reason that the percentage of yield in the case of each of said items should have been computed and included in the calculations as to ceiling prices and not having been so computed and included, the maximum prices, as calculated on said items by the plaintiff, were erroneous.

3. That as to currants the Court should have directed a verdict for the defendant for the reason that in the computation as to costs, the plaintiff included as sales made in the base period sales which should have been excluded therefrom.

4. That the Court erred in not directing the verdict for the defendant in that—

(a) As to the prices which plaintiff seeks to enforce against crab apple juice and grape juice under the General Maximum Price Regulation, that the plaintiff is without authority or capacity to enforce such prices because the First Supplemental National Defense Appropriation Act of 1943, 56 Stat. 704, by virtue of a proviso enacted therein repealed the General Maximum Price Regulation in so far as that regulation purports to control the prices of crab apple juice and grape juice.

(b) That as to strawberries, black raspberry juice and currants the prices sought to be enforced by plaintiff cannot as a matter of law be enforced by plaintiff because the use of the funds appropriated by the First Supplemental National Defense Appropriation Act of 1943 and the four succeeding Appropriation Acts which have provided the funds which the Administrator has used, is using and will continue to use to enforce maximum prices, has been denied him for the purpose of enforcing any maximum price on any agricultural food product where the price of such product does not conform in all respects with the provisions of the Stabilization Act of 1942, as amended.

(c) That the prices plaintiff seeks to enforce as to strawberries, black raspberry juice and currants do not reflect to the producer thereof the current parity or comparable prices in effect at the time the sales specified in the bill of complaint were made.

5. That the evidence is insufficient to sustain the finding of fact as to the lack of due precaution on the part of the defendant to ascertain its true ceiling prices.

Since this action is somewhat involved and has been pending since January of 1944, in order for an intelligent understanding to be had as to the various legal questions which exist, it appears advisable to review in some detail the background of the proceeding.

An adjudication has not been made of the questions which exist at an earlier date due to continuances being granted by the Court at the request of the defendant. This was caused by the illness, from time to time, of defendant's counsel. The matter was argued before the Court during the September Term of Court, 1948, at Erie, Pennsylvania.

In the complaint filed, the government claimed that the defendant violated applicable maximum price regulations as they relate to certain commodities which were manufactured, sold and processed by the defendant company:——

| Regulation | Product | Over-charge | Total Overcharge |
|---|---|---|---|
| GMPR (7 F.R. 3153) | Crab apple juice | 2509.00 | |
| | Grape juice | 6755.00 | 9264.00 |
| MPR 185 (7 F.R. 5772) | Strawberry juice | 1348.50 | |
| | Black raspberry juice | 805.00 | 2153.50 |
| MPR 207 (7 F.R. 6599) | Frozen strawberries | 114545.45 | 114545.45 |
| MPR 409 (8 F.R. 8353) | Strawberries (1943 pack) | 8910.00 | |
| | Red Currants | 2531.66 | 11441.66 |
| | Total ...................................... | | $137404.61 |

The total amount of the overcharges being $137,404.61, the government claimed a right to recover in the amount of $412,213.83, which was three times the aggregate by which the price received by the defendant exceeded the maximum prices provided by said price regulations.

Due to the many commodities involved and in order to assist the jury in their determination of the issues, the Court submitted specific findings of fact to the jury whether or not overcharges existed as to any of the commodities involved in the action. The findings of the jury were:

| Regulation | Product | Over-charge | Actions |
|---|---|---|---|
| GMPR | Crab apple juice | $2509.00 | Not willful but result of failure to exercise practicable precautions. |
| MPR 185 | Black raspberry juice | 805.00 | Not willful but result of failure to exercise practicable precautions. |
| MPR 409 | Red currants | 2531.66 | Not willful but result of failure to exercise practicable precautions. |
| MPR 185 | Strawberry juice | 1348.50 | Not willful but result of failure to exercise practicable precautions. |
| GMPR | Grape juice | None | |
| MPR 207 | Strawberries | None | |
| MPR 409 | Strawberries | None | |

To recapitulate, the motion for judgment notwithstanding the verdict is now confined to the verdict which was returned by the jury in favor of the government and against the defendant as it relates to the following regulations:

| Regulation | Product | Overcharge |
|---|---|---|
| GMPR | Crab apple juice | $2509.00 |
| MPR 185 | Black raspberry juice | 805.00 |
| MPR 409 | Red currants | 2531.66 |
| MPR 185 | Strawberry juice | 1348.50 |
| | Total | $7194.16 |

Since a motion for a new trial was not filed by the defendant and no motions were filed by the government for either a new trial or judgment notwithstanding the verdict, the question for determination is (1) whether judgment should be entered in favor of the defendant for the whole or part of the verdict returned by the jury in favor of the government.

The verdict of the jury was returned on September 25, 1946, and the motion for judgment notwithstanding the verdict was filed on September 30, 1946. On February 12, 1947 the Court entered judgment against the defendant for double the amount of the overcharges, or in the amount of $14,388.32, as provided by the Act of January 30, 1942, c. 26, Title II, § 205, 56 Stat. 33, as amended June 30, 1944, c. 325, Title I, § 108, 58 Stat. 640, as amended July 25, 1946, c. 671, §§ 12, 13, 60 Stat. 676, 677, 50 U.S.C.A.Appendix, § 925(e).

It is first contended by the defendant that the Court prematurely entered judgment in favor of the government in the amount of $14,388.32 since the motion for judgment notwithstanding the verdict had been filed, and the questions therein raised had not been adjudicated.

Rule 58 of the Federal Rules of Civil Procedure, 28 U.S.C.A. provides, inter alia, unless the court otherwise directs and subject to the provisions of Rule 54(b), judgment upon the verdict of the jury shall be entered forthwith by the clerk; but the court shall direct appropriate judgment to be entered upon a special verdict or upon a general verdict accompanied by answers to interrogatories returned by jury pursuant to Rule 49.

The judgment entered on the 12th day of February, 1947 was based upon a general verdict accompanied by answers to interrogatories in the nature of specific findings which were submitted by the Court to the jury. The motion for judgment

notwithstanding the verdict was filed within the period of ten days provided by Rule 50(b), of the Federal Rules of Civil Procedure, 28 U.S.C.A. It appears that judgment was prematurely entered on the verdict since an adjudication had not been entered of the motion to have the verdict and any judgment entered thereon set aside. The judgment should, therefore, be set aside. Murphy v. Lehigh Valley R. Co., 2 Cir., 158 F.2d 481, 485; Louisiana and Arkansas Ry. Co. v. Pratt, 5 Cir., 142 F.2d 847.

An appropriate order will, therefore, be made striking from the record the judgment entered on February 12, 1947, and an appropriate judgment will be entered on said verdict in accordance with the disposition made of the issues as they are discussed and decided in this opinion.

It is necessary for the Court to first consider those questions which directly relate to the entire claim of the government which, if decided in favor of the defendant, would obviate the necessity of any consideration being given the other legal question raised.

It is contended that the authority which existed for the Administrator to place ceiling prices on agricultural commodities and on commodities processed therefrom was subject to certain restrictions, and on failure of the Administrator to comply therewith, he is barred from bringing suit under Section 205 of the Price Control Act.

This question was first considered by the Honorable Frederick Schoonmaker, now deceased, and the Court held that the commodities involved were not agricultural commodities within the meaning of Section 3(e) of the Emergency Price Control Act; but were, on the contrary, commodities processed from agricultural commodities; and that the prohibition of Section 3(e) of the Emergency Price Control Act had no relation to such actions as the institution of suits under Section 205(e) of the Act. Bowles v. Sunshine Packing Corp. of Pennsylvania, D.C., 59 F.Supp. 164.

The defendant subsequently filed a second or renewal motion to dismiss the complaint in which it was averred that the action of the government could not be properly maintained for the following reasons:

1. That the Appropriation Acts curtail the Administrator's capacity to bring suit under Section 205 of the Price Control Act.

2. That the claim should be dismissed because Congress in the Appropriation Acts denied to the Administrator the right to use appropriated funds to enforce ceilings for agricultural commodities or processed food made therefrom where:

(a) The Administrator had fixed the ceiling price prior to the laying or adoption of a floor price by the Secretary of Agriculture.

(b) The Administrator endeavors to enforce ceiling prices before the Secretary of Agriculture adopts or lays a new floor price.

3. That the validity of the Regulation is not at issue and, as a result thereof, this Court has jurisdiction to control the Administrator's expenditure of appropriated funds where compliance has not been made with the provisions of the Price Control Act and the Appropriation Acts which made available the funds for the administration and enforcement of said Act.

The Court refused the motion of the defendant, although adjudication was not made of the question raised, for the reason that the defendant had admitted that the alleged overcharges as they relate to MPR 409, frozen strawberries for the year 1943, and MPR 185 for the year 1943, strawberry juice, were not in conflict with Section 3 of the Emergency Price Control Act. Bowles v. Sunshine Packing Corp., D.C., 5 F.R.D. 282.

Since the defendant specifically saved the question as to the right of the government to recover as to any of the claims involved in the action, it appears advisable to first dispose of the question which relates to the right of the government to recover against the defendant as to any claim other than that which relates to MPR 185 which governs ceiling prices as they relate to strawberry juice.

Section 3 of the Emergency Price Control Act, which became effective January 30, 1942, 50 U.S.C.A.Appendix, § 903, as it relates to the problem in question, provided,

inter alia, (a) that no maximum price shall be established or maintained for any agricultural commodity below the highest prices, as determined and published by the Secretary of Agriculture; (b) parity prices shall be determined and published by the Secretary of Agriculture as authorized by law. This section furthermore sets forth the procedure to be followed by the Secretary of Agriculture; (c) no maximum price shall be established or maintained for any commodity processed or manufactured in whole or substantial part from any agricultural commodity below a price which will reflect to producers of such agricultural commodity a price for such agricultural commodity equal to the highest price to be determined on the basis set forth in 3(a); and (e) notwithstanding any other provisions of this or any other law, no action shall be taken under this Act (the enforcement provision) by the Administrator or any other person with respect to any agricultural commodity without the prior approval of the Secretary of Agriculture.

Section 3(e), 50 U.S.C.A.Appendix, § 903(e), was amended on June 30, 1945: "Notwithstanding any other provisions of this or any other law, no action shall be taken under this Act (Enforcement Provision) by the Administrator or any other person, without prior written approval of the Secretary of Agriculture, with respect to any agricultural commodity or with respect to any regulation, order, price schedule or other requirement applicable to any processor with respect to any food or feed product processed or manufactured in whole or substantial part from any agricultural commodity; * * *." On the date of the effectiveness of the Price Control Act on January 30, 1942, Section 304 of said Act authorized the appropriation of such sums as may be necessary or proper to carry out the provisions and purposes of the Act. 50 U.S.C.A.Appendix, § 944.

The Appropriation Acts which make available the necessary funds to enforce the provisions of the Emergency Price Control Act provide: "No part of this appropriation shall be used to enforce any maximum price or prices on any agricultural commodity or any commodity processed or manufactured in whole or substantial part from any agricultural commodity unless and until (1) the Secretary of Agriculture has determined and published for such agricultural commodity the prices specified in section 3(a) of the Emergency Price Control Act of 1942; (2) in case of comparable price for such agricultural commodity, the Secretary of Agriculture has held public hearings and determined and published such comparable price in the manner prescribed by section 3(b) of the Emergency Price Control Act; (3) the Secretary of Agriculture has determined after investigation and proclaimed that the maximum price or prices so established on any such agricultural commodity will reflect to the producer of such agricultural commodity a price in conformity with section 3(c) of the Emergency Price Control Act: Provided further, That in the case of a maximum price or maximum prices heretofore established the provisions of the foregoing proviso shall not apply until the expiration of sixty days after the date of enactment of this Act.[1]

As far as the effect of the Appropriation Act riders on the Emergency Price Control Act is concerned, the defendant asserts that the question which has been raised does not constitute an attack upon the validity of the regulations but only upon the power of the Price Control Administrator to enforce them. That since the validity of the regulations has not been questioned and the problem is one of enforcement as provided by Section 205 of the Emergency Price Control Act, the question is one for proper consideration of this Court rather than the Emergency Court of Appeals since Section 204 of the Emergency Price Control Act, in which jurisdiction is given to the Emergency Court of Appeals relates only to the validity of the regulation.

In short, the defendant contends that an attack is not made on the validity of the regulations, but only upon the power of the Administrator to enforce them; that the provisions of the Appropriation Acts amounted to changing the substantive law

---

[1] Act of 1943, approved July 25, 1942, 56 Stat. 704; Act of 1944, approved Dec. 23, 1943, 57 Stat. 611; Act of 1945, approved June 28, 1944, 58 Stat. 600.

as it was written in the Emergency Price Control Act.

In matters which are not related to the Emergency Price Control Act, it is held that provisions of substantive law may be amended or suspended by riders in an appropriation act, and that the regularly constituted federal courts will interpret such rights. U. S. v. Dickerson, 310 U.S. 554, 60 S.Ct. 1034, 84 L.Ed. 1356; U. S. v. Vulte, 233 U.S. 509, 34 S.Ct. 664, 58 L.Ed. 1071; U. S. v. Langston, 118 U.S. 389, 394, 6 S.Ct. 1185, 30 L.Ed. 164.

Therefore, it is argued (a) since the Act of Congress in the instant case requires the performance of a condition precedent to the bringing of an action, the burden is upon the plaintiff to show that this condition precedent has been complied with and, failing to do so, plaintiff does not sustain the burden of proof and the action must fall; (b) that as to official acts of the Secretary of Agriculture and any resultant actions flowing therefrom to be performed or not performed by the Administrator, the performance or non-performance of which is made mandatory by an Act of Congress, that this Court is bound to take judicial notice that those officials either have or have not performed the same and, as the facts are in this case, since the Acts of Congress were not complied with then, on this score, plaintiff's action must fall.

■ There is nothing on the face of regulations to indicate that the Secretary of Agriculture had not approved, and there is no requirement that it appear on the face of the regulation that such approval had been made. It may or may not have been approved, but that is not here pertinent for the claim that the regulation did not become legally effective, or is not enforceable, is no more than that the regulation is invalid. Rosensweig et al. v. U. S., 9 Cir., 144 F.2d 30, certiorari denied 323 U.S. 764, 65 S.Ct. 117, 89 L.Ed. 612.

Section 3(e) of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 903 (e), in its original statutory form and as it read all during the period now in question, that is from February 1, 1943 to and including June 21, 1943, provided, inter alia, as follows: "Notwithstanding any other provisions of this or any other law, no action shall be taken under this Act by the Administrator or any other person with respect to any agricultural commodity without the prior approval of the Secretary of Agriculture".

A change in this provision of the law was not made until 1945 when by section 5(a) of Public Law No. 108, 79th Congress, 1st Session, section 3(e) of the Emergency Price Control Act was amended to read in part as follows: "Notwithstanding any other provisions of this or any other law, no action shall be taken under this Act by the Administrator or any other person, without prior written approval of the Secretary of Agriculture, with respect to any agricultural commodity or with respect to any regulation, order, price schedule or other requirement applicable to any processor with respect to any food or feed product processed or manufactured in whole or substantial part from any agricultural commodity." 59 Stat. 307, 308.

The amendment to said Act became effective on July 1, 1945. The period of violations involved in the case at bar was confined to the period from February 1, 1943 to and including June 1, 1943. The commodities involved in this proceeding are strawberry juice, crab apple juice, black raspberry juice and frozen red currants.

The phrase "agricultural commodity" in section 3(e) was in obvious contrast with the language of section 3(c): "(c) No maximum price shall be established or maintained for any commodity processed or manufactured in whole or substantial part from any agricultural commodity below a price which will reflect to producers of such agricultural commodity a price for such agricultural commodity equal to the highest price therefor specified in subsection (a)". Taub v. Bowles, Em.App., 149 F.2d 817, 823, certiorari denied 326 U.S. 732, 66 S.Ct. 39, 90 L.Ed. 435.

■ Since the items involved in the instant case would fall within the category of foods processed or manufactured in whole or substantial part from agricultural commodities, the lack of approval of the regulations by the Secretary of Agriculture is without legal significance. Supe-

rior Packing Co. v. Clark, Em.App., 164 F.2d 343, 348.

At the time the Emergency Price Control Act was enacted, the Emergency Court of Appeals was created, with the right of review in the Supreme Court of the United States.[2]

Congress was well aware when the Appropriation Acts were considered, which carried a rider limiting the authority of the Administrator, that Section 204(a) of the Price Control Act provided that any person aggrieved by action of the Administrator may within thirty days appeal to the Emergency Court of Appeals.

It is my belief that if Congress intended that the district courts were to have the right to consider the question as to whether an action could be properly maintained where the Administrator of the Emergency Price Control Act failed or neglected to comply with the provisions of the rider, which was attached to the Appropriation Acts which made available the funds for the administration of the Emergency Price Control Act, that Congress would have so spoken.

■ In the absence of such expression, I can reach no conclusion other than that the question which has been raised cannot be considered by the district court, and is a matter for the sole determination of the United States Emergency Court of Appeals and the Supreme Court of the United States.

■ The law seems to be settled that under the Emergency Price Control Act which provides that no action shall be taken thereunder by the Administrator or any other person with respect to "any agricultural commodity" without prior approval of the Secretary of Agriculture, etc., if said prior approval of the Secretary of Agriculture or of the War Food Administrator is not secured, any price regulation and amendments to fix the price of agricultural commodities will be void and not legally enforceable. Suwannee Fruit & Steamship Co. v. Fleming, Em.App., 160 F.2d 897, 898; Shrier v. U. S., 6 Cir., 149 F.2d 606, certiorari denied 326 U.S. 728, 66 S.Ct. 34, 90 L.Ed. 432.

I believe that the claim of the defendant amounts to no more than that the regulation is invalid and a question of this nature is one that is confided to the exclusive jurisdiction of the Emergency Court of Appeals. This Court, therefore, has no jurisdiction to determine the validity of the regulation. Shrier v. U. S., supra; Bowles v. American Brewery, Inc., 4 Cir., 146 F.2d 842.

■ The regulations in question for the purposes of the action in this Court must be treated as valid unless and until declared invalid by the Emergency Court of Appeals or the Supreme Court of the United States. The question which has been raised, therefore, by necessity cannot be considered by the district court. Suwannee Fruit and Steamship Co. v. Fleming, supra.

The Emergency Court of Appeals has stated that objections of the defendant to the regulations because of certain provisions of certain appropriation acts are without merit.

■ Price regulations are not invalid because of provisions of appropriation acts, there being no basis for objection under a statute which merely prescribes limitations upon use of public funds. Curtiss Candy Co. v. Clark, Em.App., 165 F.2d 791.

## Question II

That as to strawberry juice, black raspberry juice and currants, the court erred in not directing a verdict for the defendant for the reason that the percentage of yield in the case of each of said items should have been computed and included in the calculations as to ceiling prices.

It is in substance the contention of the defendant that the proposition of "yield" or, conversely, of "wastage" and the part that yield and wastage play in the computation of cost is of such major importance that the district court should take judicial knowledge of settled business practices as to the part which yield or wastage plays in arriving at the actual cost of a product. That wastage or yield must occur between the time that the defendant receives the agricultural commodities or food

---

[2] Sections 204(a), 204(c) and 204(d) Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq.

products and the time that the finished or processed product is ready for selling or marketing. That in the coring, peeling, stemming, culling, leavening and other debris which must be done in order to have the finished or processed product available for sale, a direct cost is involved which should be considered in computing the selling price. That the Court should take judicial notice of the fact that in calculating costs, in accordance with customs from time immemorial, wastage must be calculated to arrive at true cost. That since the government's regulation contained no proviso as to the consideration of yield or wastage in the computation of the ceiling price, the failure to have such inclusion in the regulation amounted to the government consenting and recognizing that yield or wastage should be included. That in every manufacturing industry the cost of raw materials and wages are the outstanding elements in the conversion of the raw materials into finished products, yet just as elemental and fundamental are such factors as yield or wastage.

The defendant says in brief that the Court should take judicial notice of the custom which exists in the computation of cost, and that since the regulation was silent as to including yield in the computation of cost, the Court should consider the custom as part of the regulation.

 Judicial knowledge may be defined as the cognizance of certain facts which a judge under the rules of legal procedure or otherwise may properly take or act upon without proof because they are already known to him or because of that knowledge which a judge has, or is assumed to have, or merely another way of expression that the usual forms of evidence will be dispensed with if the fact is one of such public concern or notoriety which is known generally by all well-informed persons. As has been said, judges will not shut their minds to truths that all others can see and understand. 15 R.C.L. 1191; 20 American Jurisprudence 46, 47; 31 C.J.S., Evidence, §§ 9, 28, pp. 510, 511, 512, 543, 544; 20 American Jurisprudence 49, 50.

 A custom of business in a specific trade is a matter of judicial cognizance if it is sufficiently notorious. 20 American Jurisprudence 119.

In addition to the foregoing, the defendant contends that even if the district court does not believe that judicial notice should be taken of the custom and usage in the manufacturing industry, yield and wastage should be considered in the computation of cost since the Office of Price Administration at the time MPR 306 was issued, which was not involved in this action in any way whatsoever, provided for the consideration of yield or wastage in computing cost. That since MPR 306 is so similar to the other regulations involved, with the exception of the provisions as to yield or wastage being considered in the computation of costs, they should be in pari materia.

 Unquestionably, the argument presented to the Court involves the consideration of a matter that generally is acceptable in business as an important part of the actual cost of the processed or manufactured article or commodity. However, this question, in my judgment, again goes to the validity of the regulations which are involved, and it is the duty of the district court to treat the regulations as valid unless and until declared invalid by the Emergency Court of Appeals or the Supreme Court. Suwannee Fruit and Steamship Co. v. Fleming, supra; Shrier v. U. S., supra.

### Question III

Should the Court have directed a verdict for the defendant as to crab apple juice for the reason that the ceiling price thereon should have been computed under Maximum Price Regulation No. 233 and not under General Maximum Price Regulation.

It is admitted by the government that if the ceiling price for crab apple juice should be computed under the provisions of MPR 233 rather than GMPR, no overcharge or violation of the ceiling price would exist. The question, briefly speaking, narrows itself down to the simplicity of whether a crab apple is an apple and if the Administrator in the promulgation of regulations intended that the maximum ceiling price for crab apples should be based under MPR 233 or GMPR.

The government contends that the ceiling price was properly computed under GMPR. The defendant contends that the ceiling price should have been computed under MPR 233. GMPR, when it was originally promulgated, was a freezing of every item or commodity until such time as it developed that certain items or commodities needed a specific regulation to govern the ceiling prices.

The mere filing of suit under GMPR, in which the government contends that the ceiling prices for crab apples are governed by said general regulation, does not in itself establish that GMPR governed the ceiling price on said commodity. Fleming, Price Admr., v. Richter, 2 Cir., 159 F.2d 792; Porter v. Kenmore Mfg. Co., 7 Cir., 161 F.2d 123; Southern Goods Corp. v. Bowles, 4 Cir., 158 F.2d 587; Fleming v. Ry. Express Agency, 7 Cir., 161 F.2d 659; Fleming v. Chicago Cartage Co., 7 Cir., 160 F.2d 992.

The sole question is whether or not the promulgation of MPR 233, which was equivalent to an Act of Congress, withdrew crab apples from the provisions of GMPR. In the interpretations of statutes or regulations, the Court must consider convenience, reason and justice; the presumption against absurdity is probably a more powerful guide to the construction than even the presumption against unreason, inconvenience or injustice.

MPR 233 (7 F.R. 10-8765) which became effective on September 24, 1942, together with its supplements and amendments, which had application during the period involved in this action on February 1, 1943 to and including June 21, 1943, provided, inter alia, as follows:

Section 1341.402—Prohibition against dealing in certain apple products above maximum prices on or after December 24, 1942, regardless of any contract or other obligation, no seller shall sell or deliver any of the apple products, for which maximum prices are established by MPR 233, at a price higher than the maximum price established by said regulation for such apple product.

Section 1341.403—The base period for each kind of grade and container size, canned apples, canned apple sauce, and canned or bottled apple juice, or sweet apple cider from whole apples, shall be the first sixty days after the beginning of the 1941 pack of such item.

Section 1341.406 sets forth and contains the seller's maximum prices and the method of computation for canned or bottled apple juice or sweet apple cider made from whole apples.

MPR 233, as it relates to apple products, in each instance refers to the products made from whole apples. No definition is set forth in the regulation as to the meaning or the classification to be included where the phrase "whole apples" is used. The defendant contends that apple juice made from a whole crab apple would fall within the terms of the regulation since a crab apple can be just as whole as any other kind of apple. It is contended that said explanation is the only reasonable construction which can be placed on the regulation since the presumption in law is against absurdity in the provision of a legislative enactment or a regulation which has the effect of law. When a law is enacted or a regulation promulgated, it may be supposed to intend reasonableness, justice and convenience, and under no circumstances can it be supposed to intend its own stultification. Interpretation of Statutes, Chapter 9, pages 324, 350.

Is a crab apple a whole apple? The proposition seems simple but it has become somewhat involved in this case.

It appears that from a horticultural standpoint crab apples would fall within the category of apples since a crab apple is nothing less than a small apple.[3]

---

[3] (a) The American Fruit Culturist by John J. Thomas, published by the Orange Judd Company, New York, 1920.

(b) American Horticultural Manual by J. L. Budd, published by John Wiley and Sons, New York, 1911.

(c) Publication "The Apple" by A. Daniel Hall, published by Martin Hopkinson, London, 1933.

(d) The Principles of Fruit-Growing by L. H. Bailey, published by the Macmillan Company, New York, 1916.

(e) Science and Fruit Growing by Duke of Bedford, published by Macmillan Company, New York, 1919.

Under the old Price Control Act, as amended by the Stabilization Act of 1942, there was a section—Section 3—which provided that no price ceilings should be established on agricultural commodities or on the products thereof which would not reflect the highest of one of three standards: the parity price (or comparable price in case one had been established), the highest price received between January and September, 1942, or a price sufficient to cover the increase in cash costs since January 1941. This provision of the Price Control Act raised the question as to the definition of an agricultural commodity for the particular purposes of Section 3. In this connection, the Solicitor's Office wrote an opinion (Opinion No. 4434, dated August 22, 1942), which held that minor agricultural commodities for which the data necessary to make the appropriate price determinations were not available might be considered as not falling within the terms of Section 3. This opinion did not, however, indicate that such commodities would not be subject to price control. Rather, it indicated that they would necessarily have to be controlled under the general provisions of the Price Control Act, as amended.

There are a number of indications from a reading of the interpretation made by the Office of Price Administration that crab apples and crab apple juice were to be treated as commodities different in nature from apples and apple juice in the Office of Price Administration regulations. This is apparent if reference is had to No. 2 Food Desk Book, published by the Office of Price Administration and which was prepared under the general direction of the Secretary of the Office of Price Administration.

As late as November 17, 1944, which was beyond the period involved in this action, a supplement was issued by the Administrator in which maximum prices for the year 1944 and later packs of canned fruits, berries and vegetables were issued. It was specifically set forth in Article I, Section 1(d) that the supplement issued superseded the provisions of all other maximum price regulations and orders as to the commodities covered thereby. 2 Food Desk Book, pages 10,601 and 10,601-A. Packed fruits was defined, Article I, Section 3, as any specified packed fruit, mixture of fruits, juice and nectar, or any mixture of juices or products made from specified fruits. 2 Food Desk Book, page 10,602.

Article II, Section 4 of said Regulations sets forth the processor's weighing average of raw material cost shall be based on a weighted average raw material price no higher than the appropriate price which is set forth in a table and which relates to apples. No reference is made to crab apples although detailed reference is made to the various types of apples that are grown in the various parts of the United States. Classification is given as to class "b" apple varieties in which it is stated that said class means all other varieties of apples used in processing. However, Article II, Section 6, sets forth in note four " * * * products made from crab apples are not covered by this supplement until such time as limitation of the raw material prices to be used in each case in figuring the 1944 raw material cost is announced. When this is determined, the supplement will be amended to provide this information." Article II, Section 6, furthermore refers to the price and methods to be used in arriving at the base period to be applied to apple products during the first sixty days after the beginning of the 1941 pack except where otherwise specified. 2 Food Desk Book, pages 10,607, 10,607-A and 10,607-A.1.

It was furthermore provided, Article II, Section 6, where consideration was given to adjustments for increases in wage rates, that one form of adjustment was to be used where apple juice was the processed commodity, and another basis to be used on commodities which were products made from crab apples. 2 Food Desk Book, page 10,607-A.1.

It, therefore, appears to me that the Administrator intended that crab apples or crab apple juice, which would be processed from crab apples, was not to be governed by MPR 233. If his intention were to the contrary, the limitations as to the applicability of MPR 233 would not have been discussed and considered in such detail and exactness as late as November 21, 1944. 2 Food Desk Book, Articles I and II, Sec-

tions 1, 3, 5, 6, pages 10,601 to 10,607-A.1 inclusive.

No consideration had been given crab apples by the Administrator prior to November 21, 1944. The time involved in this proceeding is between February 1, 1943 to and including June 21, 1943, and as a result of which the only conclusion which can be reached is that MPR 233 did not control the ceiling price on crab apple juice. This attitude of the Administrator, I must assume, was premised on an opinion of the solicitor to the Administrator of the Emergency Price Control Act, dated August 22, 1942, Opinion No. 4434, in which it was stated that minor agricultural commodities for which the data necessary to make the appropriate price determination is not available might be considered as not falling within the terms of Section 3 of the Emergency Price Control Act, as amended by the Stabilization Act of 1942. Section 3 related to price ceilings on agricultural commodities. Said opinion did not indicate that agricultural commodities would not be subject to price controls. Rather, it indicated that said minor agricultural commodities would necessarily have to be controlled under the general provisions of the Emergency Price Control Act as amended, that is GMPR, until the appropriate price determinations were available.

The difference between apple and crab apple products was, therefore, considered, publicized and treated as separate commodities by the drafters of the Regulations covering fruit and the processed products of fruit. Thus, Section 6(a) (2) of Supplement 7 to Food Products Regulation No. 1, has a separate listing for "apple juice" and for "products made from crab apples." Such listings may be observed in Food Desk Book, Volume 2, page 10,-607. These differences are also noted in the Statement of Considerations accompanying Amendment 15 to Supplement 7 of Food Products Regulation No. 1, Food Desk Book, Vol. 2, page 19,731. In both Supplement 132, Section 1(a) (2) and Amendment 59, as explained by Statement of Considerations in General Desk Book, Vol. 2, page 9,656, similar distinctions are made. The separate status of said commodities has, therefore, been long recognized and presumably known to those experienced in the fruit and fruit processing industries.

■■■■ In view of the foregoing and it being my duty to carry out and enforce the intention of the Administrator, I can reach no other conclusion as to crab apple juice than that the ceiling price on the date of the offenses involved in this proceeding must be determined on the basis of GMPR rather than MPR 233. In short, the ceiling price for crab apple juice does not fall within the definition of a whole apple as set forth in MPR 233.

In view of the technical question which exists as to the matter just discussed, I have reached the conclusion which I believe is required.

Although the interpretation of a regulation is ordinarily cognizable in the district court, the question herein, which concerns crab apple juice, is closely enmeshed with the question of validity. That is, the actions of the Administrator in computing ceiling prices for crab apple juice under GMPR rather than MPR 233 was an invalid act.

■■■■ Where it is contended that the interpretation, which the Administrator has adopted, renders invalid a regulation which, if properly interpreted, would be valid, the Emergency Court must pass upon the meaning of the regulation before coming to the question of validity. Alan Levin Foundation v. Bowles, Em.App., 152 F.2d 467; Conklin Pen Co. v. Bowles, Em. App., 152 F.2d 764; Genser v. Reconstruction Finance Corp., Em.App., 169 F.2d 136.

### Question IV

Should the Court have directed a verdict for the defendant for the reason that in the computation as to costs the plaintiff included as sales made in the base period sales which should have been excluded therefrom.

The defendant introduced evidence that the accountant for the Office of Price Administration included in the computation of the ceiling price for frozen currants sales which were not proper. An exhaustive cross-examination was made of the government's witnesses in this respect, and direct evidence was introduced by the de-

fendant that the items which were included by the government's representative were improper. The Court in its charge instructed the jury that if they found any items which were included by the government's witnesses not proper, it would be their duty to disregard the ceiling price which had been computed and return a verdict in favor of the defendant as to said item.

Points submitted by the defendant in support of the comment made in the general charge were also affirmed and read to the jury.

■ The question which existed was one of credibility, and since the jury saw fit to not accept the testimony of the defendant, it would be improper for the Court to declare, as a matter of law, that the testimony introduced by the defendant was the only evidence capable of belief when the agent for the government gave explanation and testimony as to why the ceiling price was computed in the amount which the agent determined.

## Question V

Was the evidence insufficient to sustain the finding of fact as to the lack of due precaution on the part of the defendant to ascertain its true ceiling prices.

■ The Court instructed the jury in considerable detail as to the exercise of practicable precaution to comply with the regulations, and no exception was taken thereto. Since the jury found that the defendant failed to exercise practicable precaution, this question being solely a matter for the jury's determination, I find no reason existing which would justify the Court in declaring, as a matter of law, that the evidence was not sufficient to sustain the finding of the jury.

■ The burden of proof was on the defendant to establish said fact by the preponderance or weight of the evidence, and the Court is bound by the finding of the jury. Porter v. Gray, 9 Cir., 158 F.2d

442; McCoy v. Fleming, 5 Cir., 160 F. 2d 4.

■ Under the provisions of the Price Control Act, section 205(e), as amended, 50 U.S.C.A.Appendix, § 925(e), the Court has the duty to enter judgment, where an overcharge has been found to exist, in an amount not more than three times the overcharge. Judgment shall be entered only in the amount of the overcharge where the defendant proves that the violation of the regulation was neither willful nor the result of failure to exercise practicable precautions. McCoy v. Fleming, supra.

The jury found as to all of the overcharges made that it was the result of the failure to exercise practicable precaution, although not willful.

■ In this case I believe judgment should be entered in double the amount of the overcharges.

The motion of the defendant to set aside the verdict of the jury and to enter judgment in favor of the defendant is refused.

An appropriate order will be filed.

## Order

And Now, this 25th day of October, 1948, the motion of the defendant to have the verdict rendered by the jury set aside, and to enter judgment for the defendant is refused. It appears to the Court that judgment was prematurely entered on September 25, 1946, in favor of Paul A. Porter, successor to Chester Bowles, Administrator of the Office of Price Administration, and against the Sunshine Packing Corporation of Pennsylvania in the amount of $14,388.32, and it is, therefore, ordered that said judgment be stricken from the records. It is further ordered and directed that judgment be entered upon the verdict of the jury in favor of the United States of America and against the Sunshine Packing Corporation of Pennsylvania in the amount of $14,388.32, the itemization of said judgment being:

| Regulation | Product | Verdict | Judgment |
| --- | --- | --- | --- |
| GMPR | Crab apple juice | $2509.00 | $5018.00 |
| MPR 185 | Black Raspberry juice | 805.00 | 1610.00 |
| MPR 409 | Red currants | 2531.66 | 5063.32 |
| MPR 185 | Strawberry juice | 1348.50 | 2697.00 |