## BRANNON v. GARGOTTA.

No. 33777.    Oct. 10, 1950.

*223 P. 2d 344.*

W. O. Moffett, of Tulsa, for plaintiff in error.

J. M. Hill, of Tulsa, for defendant in error.

LUTTRELL, J. This action was brought by the plaintiff, Edith Gargotta, against the defendant, Pat Brannon, for the recovery of treble damages for rent overcharges exacted by Brannon in violation of the Emergency Price Control Act of 1942. The trial court overruled defendant's demurrer to plaintiff's evidence and his motion for a directed verdict, and submitted the case to a jury, which returned a verdict for plaintiff for the full amount sued for. Defendant appeals.

In this court defendant first contends that the trial court erred in overruling his motion for directed verdict, for the reason that the evidence was insufficient to sustain a verdict for plaintiff. This requires a brief analysis of the evidence.

From the record it appears that defendant rented or leased a cottage camp near the city of Tulsa, and subrented the cottages thereon to other tenants. Plaintiff testified that she rented one of these cottages from the agent in charge of the property for the sum of $10 per week; that she occupied the property and paid this rental from the

22nd day of June, 1946, to the 14th day of December, 1946; that during that period of time she paid the rent to defendant a portion of the time, and the rest of the time she paid it to his agents in charge of the property. She produced two checks made payable to the agents of defendant in charge of the property to substantiate her testimony. She further produced as a witness an employee of the Office of Price Administration in Tulsa, who testified that from the records in that office the ceiling on the rental of said cottages was $6 per week. This was also shown by an exhibit attached to plaintiff's petition, which purported to be a photostat copy of a part of the records of the Office of Price Administration in Tulsa.

Defendant denied that he ever rented the cottage to plaintiff or that he ever received any rental from her, although he admitted that he knew she was occupying the cottage, and stated he told her that he could not afford to rent for $10 per week, and asked her to remove therefrom, which she refused to do. He admitted that his agent in charge of the property at the time she rented told him that plaintiff was a friend of hers and had no other place to go, and that for that reason she had rented the property to plaintiff. Defendant further testified that he collected no rental from the tenants and that he could not get them to move when they did not pay the rent. In response to the question: "And you didn't report that to the O.P.A." he answered, "Well, no, just like anybody else, I figured they were poor people and couldn't pay, or something. I don't know, I am just good hearted I guess, I don't know."

Plaintiff further testified, in connection with the second cause of action alleged by her for a portion of a public utility bill paid by her, that defendant still owed her $5 on the bill, which defendant also denied.

The evidence produced by plaintiff, if believed by the jury, was amply sufficient to sustain a verdict in her favor.

The applicable law under which the action was brought is subsection (e), section 925, Title 50, U.S.C.A. Appendix. That subsection provides in substance that any person violating a price schedule prescribing a maximum price or maximum prices is liable in damages, which amount shall not be more than three times the amount of overcharge upon which the action is based "as the court in its discretion may determine," and that the court may award plaintiff a reasonable attorney fee and costs. It also provides a minimum amount for which the court may render judgment in its discretion. It then contains the following proviso:

"Provided, however, That such amount shall be the amount of the overcharge or overcharges . . . if the defendant proves that the violation of the regulation, order, or price schedule in question was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation. For the purposes of this section the payment or receipt of rent for defense-area housing accommodations shall be deemed the buying or selling of a commodity, as the case may be; and the word 'overcharge' shall mean the amount by which the consideration exceeds the applicable maximum price."

Defendant contends that the trial court erred in not instructing the jury upon its own motion that if they found that his violation of the act was not willful, only the minimum amount provided by the statute could be awarded plaintiff. We do not agree with this contention. On this point defendant testified that he did not know that there was a price ceiling on the property until in the fall of 1947, at which time he went to the office of price administration in Tulsa and found out there was a ceiling price on it, and attempt-

ed to have the ceiling price raised. He further testified, in response to a question by his counsel, that until this action was brought he had no knowledge that he had overcharged plaintiff. Plaintiff's suit was filed in March, 1947, and defendant's answer to her petition was filed in April, yet, by his own testimony, he made no investigation prior to September, 1947, as to whether there was a ceiling price on this property, and what the ceiling price was. Furthermore, he did not plead that his act was not willful, or that he did not fail to take practicable precautions against the occurrence of the violation. Considering this testimony as a whole, it was not sufficient to establish that the overcharge on his part was not willful, and the record is wholly barren of any evidence tending to prove that he took any precautions against the occurrence of the violation.

In Bowles v. Krodel (C. C. A. 7) 149 F. 2d 398, the court held that in order to take advantage of the protection of the proviso above quoted, it was incumbent upon the defendant to plead it by way of answer to the complaint, and that the burden of establishing such defense rested upon him. See, also, Porter v. Gray (C.C.A. 9) 158 F. 2d 442, and McCoy v. Fleming (C.C.A. 5) 160 F. 2d 4.

It is to be noted that the proviso, in order to relieve the defendant of the penalties provided by the act, requires the defendant to establish both that the violation was not willful, and that it was not the result of his failure to take practicable precautions against the occurrence of the violation. McCoy v. Fleming, supra; Porter v. Gray, supra. Such defense was not established. The amount of the penalty was therefore left to the sound discretion of the trial court.

In McCoy v. Fleming, supra, the factual situation, and the testimony of the defendant seeking to establish that his violation of the ceiling price regulations was not willful, is almost identical with the testimony of the defendant in this case. In that case the defendant testified that he was not familiar with the rent regulations, and was not aware that he was violating them, and that as soon as the claim of violation was brought to his attention he set about to correct it. Regardless of this testimony, the trial court rendered judgment for treble damages, or three times the amount of overcharge, and defendant appealed to the Circuit Court of Appeals. The court in its opinion said:

"Whatever may be said upon the question of willfulness, it is perfectly clear that the court did not find, it could not have found, that the violations were not the result of failure to take practicable precautions. Here the defendant did not even attempt to prove that he took practicable precautions against the occurrence of the violations. Indeed, the record, showing that he took no precautions, establishes the exact contrary. The record standing thus, the judgment awarded was entirely within the discretion of the district judge, and it is affirmed."

In the instant case the trial court instructed the jury that under the Emergency Rent Control Act, the tenant could sue for and recover from the landlord in damages three times the amount of the overcharge, and further instructed the jury that if they found for the plaintiff they could fix the amount of her recovery in no event to exceed the sum of $257, the amount sued for. Defendant did not except to the instructions given, nor did he request any. From the instructions given, and from the action of the court in affirming the verdict, it appears that the trial court in its discretion determined that three times the amount of the overcharge was the judgment to which plaintiff was entitled. From the cases above cited, and from Shearer v. Porter (C.C.A. 8) 155 F. 2d 7, it appears that it was unnecessary for the court to submit such question to the jury, and, the matter being left to its discretion, it would not be bound by

the verdict of the jury. The trial court could submit to the jury the question of whether plaintiff was entitled to recover, and if the jury found she was, the court could then fix the amount to which she was entitled. From the record in the instant case it appears that the trial court, in its discretion, determined that plaintiff was entitled to three times the amount of the overcharge and in effect so instructed the jury. This fact, coupled with the fact that the trial court approved the verdict of the jury, sufficiently evidenced the exercise of discretion on its part, and in view of the defendant's testimony as above set forth, and the total failure of defendant to prove the taking of any. practicable precautions against the violation of the regulations, we think its decision and judgment was neither arbitrary nor unreasonable.

The trial court, pursuant to the provisions of the act, rendered judgment awarding plaintiff's attorney a fee of $100, which the parties stipulated was a reasonable fee.

The judgment is affirmed.

The plaintiff asks for judgment on the supersedeas bond filed in the trial court, a copy of which is incorporated in the case-made.

It is, therefore, ordered, adjudged and decreed by this court that the plaintiff, Edith Gargotta, have and recover from the defendant, Pat Brannon, and from J. L. Gregory, the surety on his supersedeas bond, the sum of $257, with interest thereon at the rate of 6 per centum per annum from March 23, 1948, until paid, together with an attorney's fee of $100, and all costs.