### CHICAGO & N. W. RY. CO. v. CURL.

#### No. 13952.

United States Court of Appeals
Eighth Circuit.

Dec. 27, 1949.

Rehearing Denied Jan. 20, 1950.

Warren Newcome, Chicago, Ill. (Alfred E. Rietz, George H. Henke, St. Paul, Minn. and Lowell Hastings Chicago, Ill., were with him on the brief) for appellant.

Irving H. Green, Minneapolis, Minn., for appellee.

Before WOODROUGH, THOMAS, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

The appellee Curl brought this action against the appellant railway company to recover damages for injuries received by him while employed by appellant as a railroad fireman. The action is based on the Federal Employers' Liability Act, as amended, 45 U.S.C.A. §§ 51–60.

The appellant admitted liability, but in defense relied upon a release executed by the appellee, which on its face, for a consideration of $700, released the railway company "from all claims and demands which I now have or may have against it by reason of personal injuries sustained by me." The printed form of release contained this statement: "I have read this release and understand that I can make no further claim against the railway company even though my injuries are more serious or different than I now know or understand them to be"; and in the release form the appellee copied the sentence just quoted.

At the conclusion of all the evidence, the appellee moved the court for a peremptory charge on the question of the validity of the release, leaving to the jury only the question of damages. The grounds advanced in support of this motion were: (1) that it conclusively appeared from the evidence that the release was obtained from the appellee by fraud and deceit practiced upon him by the claim agent of the appellant; or (2) that it conclusively appeared from the evidence that the alleged settlement of appellee's claim against the railway company was the result of a mutual mistake of the parties concerning the nature and extent of appellee's injuries. The appellant moved the court for judgment in its favor on the ground that it conclusively appeared from the evidence that the release was valid and not the result of fraud or mistake. Both motions were denied. Counsel for both parties then agreed that the court should submit two interrogatories to the jury:

(1) Do you find that the release in evidence in this suit was entered into between plaintiff and defendant as a result of a mutual mistake of fact?

(2) Was the release obtained from the plaintiff by the defendant or its agent, by misrepresentation, fraud and deceit?

This was done, and the jury were instructed that if they answered both questions in the negative the appellant must prevail, but if they answered either in the affirmative they should proceed to determine the amount appellee was entitled to recover under the evidence.

The jury answered the first question in the affirmative and the second in the negative, and returned a verdict for the appellee for $50,000 on which judgment was entered.

Appellant assigns error in the court's refusal to grant its motion for judgment and in denying appellant's requested instructions which were (1) appellant's request No. 3 to the effect that there was no evidence in the case which would warrant a finding that the release was invalid because of a mutual mistake of fact, (2) appellant's request No. 4 to the effect that the release was effective to release appellant from liability for injuries to appellee not within the knowledge of the parties, as well as from injuries to the appellee known at the time the release was made, and (3) appellant's request No. 5, a charge that the release executed by the appellee was prima facie valid; and error of the court in excluding evidence offered by appellant. Appellant also contends that the verdict is excessive.

The accident in which the appellee was injured occurred on September 19, 1947. The release was executed by the appellee on November 4, 1947, while he was still under the care of a physician employed by the appellant. Appellant's physician, on September 23rd, after an examination of appellee, reported to appellant that in his opinion the length of appellee's disability would be from 10 to 14 days. He diagnosed the injury received by appellee as a severe sprain of the neck, contusion of the left scalp followed by headaches and possible mild cerebral concussion, and mild sprain of the dorsal spine. X-rays taken at the time, in the opinion of the doctor, revealed no evidence of injury to the dorsal or cervical spine. The appellee was treated by heat and massage, occasional novocain injections to relieve the pain of which he complained, and injections of vitamin B.

Appellant's claim agent testified that at the time of the alleged settlement he had no idea that appellee was seriously injured. In securing the release he accepted as a fact the diagnosis made by the railway company's doctor. It was his understanding that appellee acted upon the same belief. He testified that he knew that the claim of appellee against the railway company was one for which the appellant was absolutely liable, and that, if he had known at the time the release was taken that appellee was seriously injured, he would not have attempted to settle the case.

From the execution of the release until November 18, 1947, appellee continued to see appellant's physician and to receive the heat and massage treatments from a doctor in private practice called into consultation by the railway company's doctor. On November 18, 1947, the railway company's doctor reported to the railway company that appellee would be able to resume his regular duties as fireman on November 25. The doctor testified that he gave the appellee this certificate of recovery at appellee's request. Appellee's testimony was that he returned to work because the railway company's doctor told him that he was able to return to work.

Appellee returned to his work as a fireman on a steam engine, and worked without interruption through the month of December. His testimony was that he suffered severe pain continually during this month and that he was able to remain at work only because the engineer did most of the work that his employment as a fireman required him to do. By January 1948 appellee was suffering from such pain and physical disability that he found it impossible to continue on his regular run. He arranged to be transferred to a diesel locomotive where his work as a fireman required less exertion. From January 1948 until June of that year appellee worked regularly except for 35 days when the pain he suffered from his

injuries was too severe to permit him to work. During that time he continued to see the railway company's physician and to receive treatments from him. Appellee's testimony is that he was able to remain on duty during this period only because either the engineer or a brakeman performed the work he was supposed to do, and that by June 1948 he was compelled by his injury to abandon his attempt to work.

At the trial the railway company's physician, who treated the appellee following his injuries, denied that he told appellee there was nothing wrong with him, but he admitted that he did tell him that he could go back to work; and that within a month after the accident, in his opinion, appellee had shown marked improvement and was able to return to his regular work. At the time he gave appellee permission to return to work he thought appellee was virtually well. He made it clear in his testimony that he at no time thought that the appellee was suffering from a serious injury.

Four medical experts were called to testify at the trial, two for the appellee and two for the appellant. Of these, appellee's witnesses diagnosed appellee's condition as a slipped or prolapsed cervical disc caused by the accident. In their opinion, appellee had suffered a permanent injury which would disqualify him from returning to his duties as a fireman for the rest of his life, subject only to the possibility that his condition might be improved, but not completely cured, by a delicate major operation on the cervical spine. Appellant's experts admitted that appellee's history and symptoms, revealed at the examination they made of him, suggested a prolapsed disc in the cervical spine. They found a condition of cervical nerve root irritation, but would not say positively that it was caused by a disc injury. One of appellant's experts testified that appellee had either a very profuse and serious soft tissue damage in the neck and shoulders, or a prolapsed disc. He said that the probability of an injured disc in the neck was so great that he would advise that appellee have a spinogram made.[1] The other thought the appellee's symptoms could be explained on the basis of a severe nerve injury in the vicinity of the cervical spine. He admitted that appellee's recovery was problematical, but he thought that with proper treatment he might in time be able to resume his former occupation.

At the time of the trial in November 1948, more than a year after the accident in which appellee received his injury, the ex-

[1.] Much is made by appellant of the fact that a spinogram was not made of appellee. It is argued that this was needed in order to be certain that appellee had a disc injury. Disc injuries will not show up in an ordinary x-ray. The spinogram is a special x-ray procedure used in disc cases. It is to be noted that none of appellant's doctors ever requested appellee to submit to a spinogram. The spinogram is a somewhat delicate and serious procedure. About half of the patient's spinal fluid is withdrawn and replaced with a certain type of oil which enables the condition of the spine to be detected in the fluoroscope and x-ray. The oil has to be removed after the test is completed. Because of the after effects the patient is usually hospitalized. All of the doctors stated that it would be of great help in diagnosing a disc injury— in confirming a diagnosis. But all of them admitted that it is used only as a diagnostic aid and only when an operation is to be performed. Dr. George, one of appellant's orthopedic surgeons, stated that disc injuries could be diagnosed without a spinogram; that spinograms are successful in diagnosis in only about three-fourths of the cases; that an exploratory operation is the only sure way to determine whether or not a patient has a disc injury; and that if the patient can get by with conservative treatment he ought to do so and not be operated on. It is a fair inference from all the medical testimony that the diagnosis of a prolapsed disc was not based upon speculation, but upon appellee's symptoms, which made its presence in the cervical spine a reasonable certainty, and that a spinogram was advised by all the doctors not only for confirming a reasonably certain diagnosis, but also for the important purpose of locating the exact position of the injury in the cervical spine in preparation for a possible operation.

pert witnesses testifying for the appellant admitted that appellee was a very sick man, was in no condition to perform hard labor, and unable to work as a railroad fireman.

In support of its contention that the trial court should have granted its motion for judgment, appellant relies on the rule that a release of the character involved in the present proceeding is presumptively valid, Callen v. Pennsylvania Ry. Co., 332 U.S. 625, 68 S.Ct. 296, 92 L.Ed. 242, and that the burden is upon the appellee to establish its invalidity for mutual mistake of a material fact by clear and convincing evidence, citing Chicago & N. W. Ry. Co. v. Wilcox, 8 Cir., 116 F. 913, 914, in which this court said: "Again, it is not every mistake that will lay the foundation for the recission of an agreement. That foundation can be laid only by a mistake of a past or present fact material to the agreement. Such an effect cannot be produced by a mistake in prophecy or in opinion, or by a mistake in belief relative to an uncertain future event. A mistake as to the future unknowable effect of existing facts, a mistake as to the future uncertain duration of a known condition, or a mistake as to the future effect of a personal injury, cannot have this effect, because these future happenings are not facts, and in the nature of things are not capable of exact knowledge; and everyone who contracts in reliance upon opinions or beliefs concerning them knows that these opinions and beliefs are conjectural, and makes his agreement in view of the well-known fact that they may turn out to be mistaken, and assumes the chances that they will do so. Hence, where parties have knowingly and purposely made an agreement to compromise and settle a doubtful claim, whose character and extent are necessarily conditioned by future contingent events, it is no ground for the avoidance of the contract that the events happen very differently from the expectation, opinion, or belief of one or both of the parties. * * *"

■■ The validity of the release relied on as a defense in an action brought under the Federal Employers' Liability Act is a question of Federal Law. Irish v. Central

Vt. Ry. Co., 2 Cir., 164 F.2d 837, 839; Thompson v. Camp, 6 Cir., 163 F.2d 396, 400. We do not question the rule of the Wilcox case. See Lion Oil Refining Co. v. Albritton, 8 Cir., 21 F.2d 280; Southwest Pump & Machinery Co. v. Jones, 8 Cir., 87 F.2d 879. But appellant is in error in its appraisal of the evidence. The difference between the facts in this case and in the Wilcox case is at once apparent. Compare Great Northern Ry. Co. v. Fowler, 9 Cir., 136 F. 118, 123. In the Wilcox case the injury for which the plaintiff gave her release was known. There was no mistake as to the character or extent of her injury. The mistake upon which she relied for the rescission of the release was a mistake in the prophecy or opinion of her physician as to the time required for her recovery from a known injury. In this case there was much more. The evidence was sufficient to justify the jury in finding that the release was given as the result of a mutual mistake as to the nature of the injury sustained. Appellant's evidence leaves little room for doubt that the physician who examined the appellee on behalf of the railway company, the claim agent who settled the claim, and the appellee honestly believed that appellee's injuries were of minor character and that his complete recovery was assured for the immediate future. There was a mistake of both parties concerning a present fact material to the contract.

■ In order to establish mutual mistake in the execution of a release fatal to its validity it was not necessary, as appellant contends, that appellee show the exact and particular nature of the injury received by him. Appellee was not under the burden of proving with absolute certainty that he suffered from a prolapsed cervical disc. It was only necessary that he produce evidence which, read in the light most favorable to him, supported a finding of the jury that at the time of the release appellee was suffering from a substantial and severe injury from which, at best, recovery was doubtful, and that the release was given in the mistaken belief on the part of appellee and appellant, honestly but erroneously

held, that appellee's injury was not permanent nor serious, but on the other hand of a minor character from which his complete and early recovery was certain.

■ Appellant's instructions Nos. 4 and 5 were sufficiently covered by the court's charge to the jury. In its charge the court told the jury that the language of the release was broad enough to cover all damage sustained by the appellee; and, if the jury believed from the evidence that appellee when signing the release understood its full import and knew that he was releasing the appellant from all claims and damages resulting from his injuries he was bound by the release. The jury were told that the burden was on the appellee to prove that the execution of the release was induced by a mutual mistake of the parties by clear and convincing evidence. The court charged that the mutual mistake to invalidate the release must have been a mistake of both parties as to a fact material and substantial, and amplified this statement by saying that appellee was required to show that a mistake was made in that appellee at the time of the release was suffering from a substantial injury unknown to either of the parties.

■ Appellant is in no position to urge on appeal error of the trial court in refusing to give appellant's requested instruction No. 3, which told the jury that there was no evidence in the case which would warrant them in finding that the release was the result of a mutual mistake of fact, since appellant agreed that the question should be submitted to the jury. The error, if any, was appellant's and not the court's. The position on this question which appellant takes in this court is wholly inconsistent with the position it took in the trial of the case. United States v. Wurtsbaugh et al., 5 Cir., 140 F.2d 534, 537; Smails et al. v. O'Malley, 8 Cir., 127 F.2d 410, 414; Lake City, Nettleton & Bay Road Improvement Dist. et al. v. Luehrmann et al., 8 Cir., 113 F.2d 458, 469.

■ Appellant's assignment of error in the court's refusal to receive evidence offered by appellant raises the question whether the present value of appellee's probable future earnings was to be computed upon his average gross income as a railroad fireman, or upon his average income in that capacity after deductions for income tax, railroad retirement, and other miscellaneous deductions. The actuary who testified for appellee based his computations on appellee's average gross income for several years prior to the action, and the court refused to receive appellant's offer of proof of appellee's average net earnings after deductions. Appellant offers no authority in support of this contention. But see and compare Stokes v. United States, 2 Cir., 144 F.2d 82, 87; Cole v. Chicago, St. P., M. & O. Ry. Co., D.C., 59 F.Supp. 443, 445; Majestic v. Louisville & N. R. Co., 6 Cir., 147 F.2d 621, 626-627. We conclude that there was no prejudicial error in the court's refusal to accept appellant's offer of proof. Appellee's expert witness made it plain that his evidence was based upon the experience of insurance companies and that neither the life expectancy of the appellee nor the earning power of money could be foretold with certainty. We may assume that the jury were aware of these facts, as well as the fact that the average earnings, net or gross, of the appellee for the future could not be definitely known.

■ There remains for consideration appellant's assignment that the verdict is excessive. In a long line of cases this court has held that this assignment is not properly addressed to this court. See New York, C. & St. L. R. Co. v. Affolder, 8 Cir., 174 F.2d 486, 493. Assuming, as appellant contends, Virginian Ry. Co. v. Armentrout, 4 Cir., 166 F.2d 400, 407-409, 4 A.L.R.2d 1064, that this court may and should reverse a judgment in the exceptional case, "where the verdict is so manifestly without support in the evidence that failure to set it aside amounts to an abuse of discretion" on the part of the trial court, we are unable to find anything in this record to justify that action in this case.

The judgment is affirmed.