## MISSOURI–K.–T. R. CO. OF TEXAS v. RIDGWAY.

### No. 14189.

United States Court of Appeals
Eighth Circuit.
Aug. 30, 1951.

Everett Paul Griffin, St. Louis, Mo., and O. O. Touchstone, Dallas, Tex. (G. H. Penland, Dallas, Tex., on the brief), for appellant.

William H. DeParcq, Minneapolis, Minn. (Chester D. Johnson, Minneapolis, Minn., Harvey B. Cox and Harvey B. Cox, Jr., St. Louis, Mo., on the brief), for appellee.

Before GARDNER, Chief Judge, and RIDDICK and COLLET, Circuit Judges.

GARDNER, Chief Judge.

The instant action was brought by Ralph P. Ridgway against Missouri-Kansas-Texas Railroad Company under Section 11, Title 45 United States Code Annotated, to recover damages for personal injuries. The parties will be referred to as they were designated in the trial court.

At the time of the accident resulting in plaintiff's injuries he was employed by defendant as a switchman in its yards at Fort Worth, Texas. The defendant is a common carrier and at the time of the accident plaintiff and defendant were engaged in interstate commerce. It is alleged that the accident occurred in the course and conduct of certain switching operations during which, in the performance of his duty, plaintiff was required to get upon a certain car for the purpose of regulating and controlling its movement and speed by operating the hand brake upon the car and and that the car was not equipped with an efficient hand brake and as a result of its defective and inoperative condition plaintiff in operating said brake in the usual and customary manner was caused to be thrown, knocked and pitched from the car to the ground and dragged and run over, resulting in personal injuries.

Viewing the evidence, as we must, in a light most favorable to the plaintiff, the facts in connection with the accident may be succintly stated as follows: About 7:30 o'clock on the morning of March 11, 1946, plaintiff mounted a north-bound tank car at its northeast corner and went immediately to the hand brake, intending to stop the car about four or five car lengths off the lead, to make room for other car movements. He stood on the running board, eight or ten inches wide, which completely circled the tank car. After taking the slack out of the hand brake he inserted his club and put some pressure on it but the brake did not retard the progress or speed of the car. He then released the brake and began tightening it up, placing his club in the brake wheel and putting pressure on it. He was stooped over with his left hand on the grabhold which extended all the way around the car at shoulder level. While in this position and pulling clockwise with his brake club, the wheel suddenly broke loose and unexpectedly yielded, coming toward him and throwing him off the moving car. His body landed between the rails of the track, his head hitting the west rail immediately ahead of the wheel which struck his head and knocked it off the rail and he was rendered unconscious. His left hand and his right foot received injuries and he was dragged under the car for some distance. When he recovered consciousness he was lying between the rails. A fellow employee called for an ambulance and he was taken to a hospital for surgical and medical treatment. The extent and severity of his injuries, not being material to the cause of the accident and the right of recovery, may be referred to later herein.

The action was tried to a jury and at the close of all the testimony defendant moved for a directed verdict which was denied and the case was submitted to the jury upon instructions to which certain exceptions were saved by defendant. The jury returned a verdict in favor of the plaintiff, assessing his damages at $98,800. Defendant then moved for judgment notwithstanding the verdict or in the alternative for a new trial, which motion was denied, and it prosecutes this appeal. It seeks reversal on various grounds not very succinctly stated in its brief but it contends that: (1) the court erred in denying its motion for a directed verdict and for judg-

ment notwithstanding the verdict; (2) the trial court erred in admitting certain evidence; (3) counsel for plaintiff was guilty of such misconduct as to constitute reversible error; (4) the verdict of the jury is grossly excessive and monstrous and reflects passion, bias and prejudice on the part of the jury.

This action is bottomed on the so-called Safety Appliance Act, Title 45, Section 11, U.S.C.A. This act among other things provides that, "It shall be unlawful for any common carrier subject to the provisions of sections 1–16 of this title to haul, or permit to be hauled or used on its line, any car subject to the provisions of said sections not equipped with appliances provided for in sections 11–16 of this title, to wit: All cars must be equipped with secure sill steps and efficient hand brakes; * * *."

The act was designed to safeguard and protect railroad employees against the hazard of their employment by requiring railroads to equip their cars with various safety devices including "efficient hand brakes". Liability on the part of the carrier for injuries is predicated on its failure to observe the requirements of the act. Compliance with the act is an absolute duty and any failure to comply therewith which results in injury to an employee gives rise to liability to compensate the injured employee for his injuries regardless of actual negligence on the part of the railroad company other than failure to comply with the statute. The statutory duty is not satisfied by the exercise of reasonable care in maintaining the prescribed safety appliances in a safe, operative condition, nor is it discharged by the exercise of great care to keep these appliances reasonably safe. If the evidence showed that the appliance which is required by the act was defective or out of repair at the time the injuries were received, no importance can be given to the question as to whether or not this condition was attributable to negligence on the part of the defendant. In the instant case if it be shown that the hand brake was not an efficient hand brake and that such condition caused or contributed to the injuries

suffered by the plaintiff, then there was a right of recovery. As said by the Supreme Court in Myers v. Reading Company, 331 U.S. 477, 67 S.Ct. 1334, 1339, 91 L.Ed. 1615, "The respondent is not subject, as has been suggested, to an absolute liability to its employees comparable to that established by a workmen's compensation law. As an interstate common carrier, however, it is subject to liability for injuries to its employees resulting from its violation of its absolute duty to comply with the Safety Appliance Acts. The evidence here was sufficient to support the verdict for the petitioner, whether tested by the formula used by this Court in Improvement Co. v. Munson, 14 Wall. 442 [20 L.Ed. 867]; Slocum v. New York Life Ins. Co., 228 U.S. 364, 33 S.Ct. 523, 57 L.Ed. 879; Tennant v. Peoria & P. U. R. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520; or Lavender v. Kurn, supra [327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916]. The requirement is for probative facts capable of supporting, with reason, the conclusion expressed in the verdict."

Here the evidence warranted the jury in finding that the plaintiff was attempting to operate this brake in the usual and customary manner; that when so operated it did not effectively perform its functions as an efficient brake and the evidence warranted the jury in finding that the failure to so function was the proximate cause of plaintiff's injuries. But not only was there proof that the brake did not properly function but there was proof that it was mechanically defective. The proof was undisputed that the chain which normally tightens about the brake shaft when the brake is being set was five or six inches longer than the standard chain in general use. There was evidence that because of this extra length it kinked up or "wadded and all knotted up"; in fact, testimony offered on behalf of the defendant itself was to the effect that this chain was too long for an efficient brake. In Myers v. Reading Co., supra, in speaking of the character of proof to show inefficiency the court said: "The inefficiency of the brake in this case may have consisted of its defective condition or its de-

fective functional operation resulting, in either case, in its knocking from the brake platform an experienced railroad man attempting to tighten or set the brake in the customary manner described in his testimony."

We think the jury could reasonably have found that the brake was not an efficient brake and that its defective condition contributed to or caused plaintiff's injuries and hence there was no error in denying defendant's motion for a directed verdict.

■ There was offered in evidence Exhibits A-1, A-2 and A-3, the records with reference to the condition of the hand brake. These were records regularly kept by the defendant. They were offered for the limited purpose of showing the condition of this brake at the time of the accident and they purported to show that fact. But it is claimed that they were inadmissible because they were evidence of subsequent repairs. However, they were not offered for the purpose of showing subsequent repairs and whatever notation the records may have had with reference to subsequent repairs might have been deleted had defendant's counsel so asked. Manifestly, the notation showing the condition of the brake at the time of the accident was admissible and that part of the record might have been read to the jury, omitting the other parts, had counsel for defendant so desired. Baltimore & O. R. Co. v. Felgenhauer, 8 Cir., 168 F.2d 12; Southern Pacific Co. v. Schoer, 8 Cir., 114 F. 466. But quite aside from this, defendant itself showed that there had been subsequent repairs or changes made in the appliance by shortening the chain, and there was nothing in these exhibits that was not abundantly proven by other testimony in the case so that even if it were technical error to admit them in evidence it was error without prejudice.

■ There was also objection to the introduction in evidence of the hospital record. This did not go to the right of recovery but rather to the extent of injuries and suffering. This record was identified and authenticated by the record librarian. It was kept in the usual and regular course of business of the hospital. It is not re-

produced in the record and we think it was admissible. New York Life Ins. Co. v. Taylor, 81 U.S.App.D.C. 331, 158 F.2d 328; Rule 43, Federal Rules of Civil Procedure, 28 U.S.C.A. So far as we can determine the record contained no evidence that was not shown by other substantial evidence and the admission of the record, if erroneous, has not been shown to have been prejudicial.

The contentions of the defendant that the verdict is excessive and that plaintiff's counsel was guilty of prejudicial misconduct in his argument to the jury are so closely related that we shall consider them together.

■ We have quite consistently held that in a tort action the excessiveness of the verdict is a question to be submitted to the trial judge on motion for new trial and can not be considered as a ground for reversal by this court. Kroger Grocery & Baking Co. v. Yount, 8 Cir., 66 F.2d 700, 93 A.L.R. 1166; Peitzman v. City of Illmo, 8 Cir., 141 F.2d 956; Chicago & N. W. Ry. Co. v. Green, 8 Cir., 164 F.2d 55; St. Louis Southwestern Ry. Co. v. Ferguson, 8 Cir., 182 F.2d 949. The rule which we have followed is not, however, without challenge and some of the Federal courts now hold that an appellate court may review as a question of law whether the trial court abused its discretion in refusing to set aside a verdict for excessiveness. This was considered by us in Chicago & N. W. Ry. Co. v. Curl, 8 Cir., 178 F.2d 497, 502, but we said that even recognizing the rule that where a verdict is so manifestly without support in the evidence that failure to set it aside amounts to an abuse of discretion on the part of the trial court, "we are unable to find anything in this record to justify that action in this case." The Supreme Court in Affolder v. New York, C. & St. L. R. Co., 339 U.S. 96, 70 S.Ct. 509, 511, 94 L.Ed. 683, referring to a contention that the verdict was excessive, among other things said: "We agree with the Court of Appeals that the amount of damages awarded by the District Court's judgment is not *monstrous* in the circumstances of this case. * * *" (Italics supplied).

And in St. Louis Southwestern Railway Co. v. Ferguson, supra, we said:

"From this statement it would appear that the Court had undertaken to scrutinize the amount of the damages, and that it mistakenly assumed that we had done so also. * * *

"It may be that a change in the rule is desirable, to allow a general review of the question of excessiveness, such as is the practice in many state appellate courts, or with a more restrained sense of responsibility, perhaps, to permit judgment to be passed upon whether there has been an abuse of discretion by the trial court in refusing to set aside a verdict on motion for new trial. Difficulties, however, would be involved in any such practice, as Judge Learned Hand has pointed out in the Miller case [Miller v. Maryland Casualty Co.], supra, 2 Cir., 40 F.2d [463] at page 465; and, under the concept of appellate function in jury cases which has heretofore been expressed by the decisions of the Supreme Court and in our own, the change is not one which we would feel entitled to make." [182 F.2d 955.]

▮▮▮▮ The verdict in this case is confessedly a large one and whether or not it can properly be proclaimed as "monstrous" we need not attempt to decide. We satisfy ourselves by saying that in our opinion it is so excessive as to shock the conscience. Plaintiff suffered serious injuries. He is not, however, as a result of those injuries a helpless cripple. From most of them there has been a recovery. There remains a permanent injury to his left hand and a permanent injury to one of his feet. He has doubtless suffered much. While his left hand is permanently injured he has the hand and all five fingers and can use the thumb and first finger of the injured hand. His doctor testified that he had a 75 per cent loss of the use of the left hand but that it was a useful hand. His doctor also testified that he had a 50 per cent loss of the use of his injured foot but that the injured foot was a usable foot. He uses it in walking and in driving a car. There were no permanent injuries to his nervous system and he suffered no brain injury. Though he suffered a fracture of the spine it has healed. Not long after his injuries he made trips on trains, busses and automobiles, and according to his own testimony, in October, 1946, he was walking on his injured foot, driving his car, using the injured foot in driving his car, including applying the brake and using his injured hand in driving his car, and using his skill and brains in preparing or helping to prepare his case. He traveled by train to Kansas City and by plane to Minneapolis. He was able to travel alone, to walk alone, to bathe and dress himself alone and attend to all the necessities of a traveler on tour. For about six months he traveled to various parts of Texas soliciting personal injury cases for Mr. McDonald, his then Minneapolis lawyer. He, without assistance, traveled to various places, including New York City. Dr. Louis J. Levy, one of plaintiff's doctors who treated him in the hospital said that he "has a useful leg, has a useful hand, that he conducts himself intelligently, that he saw him taking notes during the depositions in October, 1948, that there are undoubtedly various fields where Ridgway could work, even with his hand and with his leg and earn a living." One of the doctors who treated Ridgway testified that in his opinion he could do various kinds of clerical work, with his leg and hand in their present condition and in his present physical condition.

We need not go into further details as to his apparent physical condition. Suffice it to say that he is not as a result of his injuries a helpless cripple. During the year immediately prior to his accident plaintiff's gross earnings were $1778.55. The verdict is for an amount more than fifty-five times his annual earnings for the year immediately prior to his accident. He has an expectancy of about thirty-one years. Assuming that his earnings would continue substantially the same during that time the verdict would still be nearly twice as much as he could be expected to earn. Damages should be compensatory, there being no ground for assessing punitive damages. Having reached the conclusion that the amount of the verdict is not fairly supported by the evidence we turn to a consideration of the alleged misconduct of counsel in his argument to the jury, with a view of determining whether the

verdict is the result of passion and prejudice aroused by his argument.

 Manifestly, if an unjust verdict is the result of misconduct of counsel it ought to be set aside. It is fundamental that the argument of counsel should be confined to the questions at issue and the evidence relating thereto adduced at the trial, and such inferences, deductions or analogies as may reasonably be drawn therefrom. In this case there was not involved any question of negligence and the substantial evidence so far as the merits of the case are concerned rather clearly indicated liability so that the paramount issue to be submitted to the jury was the amount of damages. Counsel for plaintiff in an attempt to explain, excuse or justify some of his remarks to the jury has printed a supplemental record. The proceedings set out in the supplemental record were not before the jury and hence would not warrant any statement or argument based thereon. In so far as such argument was based upon what occurred before the jury it might have been warranted but it was based upon or claimed to be justified by what occurred during the hearing of various motions, a matter entirely foreign to the issues to be tried by the jury. The issues to be determined by the jury were whether the hand brake was an efficient brake and if not whether plaintiff's injuries resulted from the failure of defendant to provide such efficient brake, and also the amount of damages resulting from plaintiff's injuries. In the course of his argument to the jury plaintiff's counsel said: "All I can say is that it was a lucky day for Ralph Ridgway when McDonald's investigator Helin got possession of that chain, long enough that day down in Fort Worth to get it photostated and to get it measured, or neither this court or this jury would ever have known how long it was, I can assure you that."

Again counsel said: " * * * thank God for Ralph Ridgway, we had some records in this case, finally got possession of them, we have got them, and if we did not have them you would not have recognized this was the same lawsuit."

There was apparently a studied effort to convey to the jury the impression that opposing counsel were attempting to conceal or suppress facts. Texas Indemnity Ins. Co. v. McCurry, Tex.Com.App., 41 S. W.2d 215, 78 A.L.R. 760. How plaintiff secured possession of the records referred to was not an issue in the case but the inference was that defendant was to blame for not making its records more easily available to plaintiff. Again, this was not an issue before the jury.

In his closing argument counsel, impersonating plaintiff, said of defendant: " * * they broke my back in three places, and took me off the payroll the same day, they fractured my skull in two places, gave me a brain injury with osteomyelitis, I had seven fractured ribs, a fractured shoulder, I have got a crushed hand, a crushed foot."

As we have before observed there was no question of negligence in this case and certainly no question of willful or wanton conduct on behalf of the defendant resulting in plaintiff's injuries and there was no basis for this denunciation and it could have had no purpose other than to arouse the passion and prejudice of the jury. The entire argument is punctured by unwarranted denunciations of defendant and its counsel and this intemperance in argument is repeated in counsel's brief in this court wherein he says: "The only misconduct in this case may be attributed to counsel for defendant. From the very inception of this litigation, the conduct of defendant's counsel has been characterized by hypocrisy, fraud, dishonesty and buffoonery. They sought to conceal evidence, disobeyed court orders, resorted to every known technicality and stalling maneuver, made innumerable and senseless objections, and attempted to make the administration of justice as difficult as possible."

 While considerable latitude is allowed counsel in argument before the jury in criticizing opposing counsel, nevertheless counsel must keep within the evidence and may not employ language not justified by the record, or resort to uncalled for personal abuse, and it is highly reprehensible for counsel in argument to use,

without supporting evidence, language implying that facts have been suppressed by opposing counsel. While freedom of speech must be accorded counsel, it is said to be license, not freedom of speech, for counsel to base his argument on an appeal to passion and prejudice not warranted by the proof. New York Central R. Co. v. Johnson, 279 U.S. 310, 49 S.Ct. 300, 73 L. Ed. 706; Viereck v. United States, 318 U.S. 236, 63 S.Ct. 561, 87 L.Ed. 734; Chicago & N. W. Ry. Co. v. Kelly, 8 Cir., 84 F.2d 569; Kroger Grocery & Baking Co. v. Stewart, 8 Cir., 164 F.2d 841; London Guarantee & Accident Co. v. Woelfle, 8 Cir., 83 F.2d 325; Union Electric Light & Power Co. v. Snyder Estate Co., 8 Cir., 65 F.2d 297; Rouse v. Burnham, 10 Cir., 51 F.2d 709; Walsh v. Terminal R. Ass'n of St. Louis, 353 Mo. 458, 182 S.W.2d 607; Monroe v. Chicago & A. R. Co., 297 Mo. 633, 249 S.W. 644; Dodd v. Missouri-Kansas-Texas R. Co., 353 Mo. 799, 184 S.W. 2d 454.

In Kroger Grocery & Baking Co. v. Stewart, supra, the alleged misconduct of counsel for plaintiff in his argument was that opposing counsel "had 'tried everything except the facts' ". [164 F.2d 844.] In the course of the opinion it is said: "The remark was improper and offensive and the refusal of the court to direct the jury to disregard it was error. The attitude of this Court and of other federal appellate courts toward the interjection of irrelevant personalities and appeals to prejudice or passion in final argument, has been so clearly stated in many cases as to call for no further discussion."

In view of the uniform holding of this court on this question we can not hold that the defendant has had a fair and impartial trial and that the verdict was not the result of passion and prejudice aroused by the appeals of counsel in his argument. It is to be noted too that while the defendant's counsel made timely objection to the argument of counsel their objections were overruled and counsel was permitted to proceed without reprimand and without instructions to the jury to disregard the improper remarks. We repeat with approval the words of Judge Sanborn speaking for this court in Kroger Grocery & Baking Co. v. Stewart, supra: "This Court, in the interest of an orderly administration of justice, will continue to do all that reasonably may be done to assure litigants that a trial in a District Court of the United States shall be so conducted that the verdict of the jury fairly may be assumed to be based upon an impartial consideration of the evidence and the applicable law."

Convinced as we are that the defendant did not have a fair trial and that the verdict was influenced by the improper appeals of counsel for plaintiff to passion and prejudice, the judgment based thereon is reversed and the cause remanded with directions to grant a new trial.