Donald P. BECKSTED, Plaintiff,

v.

SKELLY OIL COMPANY, Defendant.

Civ. No. 4924.

United States District Court
D. Minnesota, Fourth Division.

June 20, 1955.

LeRoy Bowen, Minneapolis, Minn., for defendant.

Donald L. Rudquist, Minneapolis, Minn., for plaintiff.

DEVITT, District Judge.

This memorandum and order are occasioned by defendant's alternate motion for judgment notwithstanding the verdict or for a new trial following the jury's return of a verdict for plaintiff in the sum of $175,956 in a personal injury action.

The verdict was returned on March 25, 1955. The motions were made and argued, after timely notice, on May 20, 1955. Briefs were subsequently filed.

Defendant urges as grounds for judgment notwithstanding the verdict that the Court erred in denying his motion for a directed verdict made after all the testimony was in because the plaintiff had not presented a jury case.

■ The Court has power to enter judgment notwithstanding the verdict for only one reason, and that is the absence of any substantial evidence to support the verdict. Barron & Holtzoff, Sec. 1079 and cases cited therein. A motion notwithstanding the verdict cannot be granted unless the plaintiff failed to make a case and the motion for a directed verdict should have been granted. Montgomery Ward & Co. v. Duncan, 1940, 311 U.S. 243, 61 S.Ct. 189, 85 L. Ed. 147.

The plaintiff attempted to show that he entered the defendant's gasoline filling station as a customer on October 21, 1952 and while there an explosion and fire occurred through the negligence of defendant, principally in that the defendant failed to comply with the fire and building ordinances of the City of Minneapolis as to the construction, maintenance and operation of the filling station building. His theory of trial was, and evidence was introduced tending to show that, "Skelly Solvent", a cleaning fluid manufactured by defendant, was being used at the time to clean the grease room floor, and that fumes therefrom, or from an open waste oil disposal pipe within the building, were ignited by flames from an improperly protected furnace causing the accident and injury.

■ The Court is satisfied that there was substantial evidence presented upon which the jury could fix liability upon the defendant. The Court, on this motion, may not weigh the evidence nor may it substitute its judgment on a question of fact for that of the jury. Barron & Holtzoff, Sec. 1075 and 1079, and cases cited there. Baltimore & Ohio Ry. Co. v. Postom, 1949, 85 U.S.App.D.C. 207, 177 F.2d 53; George v. Leonard, D.C. E.D.S.C.1949, 84 F.Supp. 205; Porter v. Sunshine Packing Corp. of Pennsylvania, D.C.W.D.Pa.1948, 81 F.Supp. 566; Gadmoski v. Pitney, D.C.M.D.Pa.1945, 59 F.Supp. 641.

Defendant's motion for judgment notwithstanding the verdict is denied.

The defendant's motion for a new trial is predicated on 33 alleged grounds, a majority of which deal with the giving or the failing to give certain instructions.

Among the grounds asserted is that of excessiveness of the verdict. Had the defendant not moved for a new trial on that ground, the Court would have felt obligated, on its own initiative, to have taken remedial action under Fed.Rules Civ.Proc. rule 59(d), 28 U.S.C.A., for, clearly, the verdict in this case is excessive.

■ It is the unmistakable duty of trial courts to grant new trials where excessive verdicts are returned and the granting or refusing thereof rests in the sound discretion of the trial judge and will not be reviewed on appeal, in the federal system, except for exceptional circumstances. Fairmont Glass Works v. Cub Fork Coal Co., 1933, 287 U.S. 474, 53 S.Ct. 252, 77 L.Ed. 439. This is the stated policy followed by the Courts of Appeals in most of the circuits. It is true in the Eighth Circuit. Missouri-K.-T.-R. of Texas v. Ridgway, 1951, 191 F. 2d 363, 29 A.L.R.2d 984. But one can easily discern a growing tendency to break away from a strict adherence to the rule, not on the theory that the Appellate Court will review the alleged excessiveness of verdict directly, but that it will review, as a matter of law, the trial court's exercise of discretion in refusing to set aside an excessive verdict and thus reach the same objective. Chicago Northwestern Ry. Co. v. Curl, 8 Cir., 1949, 178 F.2d 497, 502; Missouri-K.-T.-R. of Texas v. Ridgway, supra; Virginian Ry. Co. v. Armentrout, 4 Cir., 1948, 166 F.2d 400, 4 A.L.R.2d 1064; Cobb v. Lopisto, 9 Cir., 1925, 6 F.2d 128.

The Seventh Circuit, while subscribing to the basic principal of non-reviewability of alleged excessive verdicts, has become much more scrutinous of other aspects of such appeals and, in scanning "'the trial more closely for error'", has reversed on other grounds. Wetherbee v. Elgin, Joliet & Eastern Ry. Co., 1951, 191 F.2d 302, 310.

However the Appellate Courts may view their responsibility, the action, if necessary, should be taken by the trial court in the first instance.

In this case the plaintiff was awarded $175,956 for first, second and third degree burns received, principally, to the lower extremities. One of plaintiff's doctors, a plastic surgeon, testified that plaintiff had a 50% permanent disability to his left leg and a 25–30% permanent disability to his right leg. Extensive skin grafting was performed. More operations are needful to relieve tensions of the new skin, especially around the feet and ankles. Plaintiff was hospitalized for a period of about nine months at the United States Naval Hospital, Great Lakes, Illinois and at the Veterans Administration Hospital in Minneapolis. Plaintiff suffered extreme pain and will never have full and normal use of his legs.

The plaintiff was born September 21, 1933 and was 20 years of age at the time of the accident. It was stipulated that he has a life expectancy of 48.55 years. He is married and has one child. He has a high school education and took some business college work. His only period of regular employment was for about six months starting in January, 1951. He worked at the Minneapolis Honeywell Regulator Plant as a paint

sprayer. He earned $1.65 an hour and worked a 40-hour week.

At the time of the accident plaintiff was an enlisted man in the United States Navy. He went on active duty in July, 1951. He was off duty at the time of the accident.

The evidence showed that all of his hospital and medical expenses were defrayed by the United States Government, either through the Navy Department or the Veterans Administration. It also appeared that future hospitalization and medical care will be furnished him without charge by the Veterans Administration.

In arguing to the jury, plaintiff's counsel suggested that the sum of $223,238 would be an adequate amount of damages to award, based on the following computation:

### Total Damages

| | |
|---|---:|
| I. Medical, Past & Future | $ 17,238 |
| II. Loss of Earnings and Earning Capacity, Past & Future | 55,000 |
| III. *Past* Pain & Suffering | 75,000 |
| IV. *Future* Pain & Suffering | 76,000 |
| | $223,238 |

The jury was apparently attentive to his suggestions in awarding what they did.

This computation was accompanied by a break-down of each of the four categories showing the component parts of the damages allegedly suffered. For instance, future pain and suffering was computed on a daily basis for the life expectancy of 48.55 years. This resulted in "17,000 days @ $3=$51,000.00."

The Supreme Court of Minnesota in a recent decision, Hallada v. Great Northern Ry. Co., 69 N.W.2d 673, 687, made a poignant observation about this method of computing damages. It said:

"The segmentation process of breaking the damage picture into fragments and then applying to each fragment a mathematical formula whereby damages are calculated at a fixed rate per day for the entire period of the injured person's life expectancy, though illuminating, may be misleading."

The court then proceeded to point out how difficult, nay, impossible it is to strait-jacket such a thing as pain and suffering into a day-to-day computation. Damages must be tested, the court said, from " * * * the unitary standpoint of what total financial benefits that lump sum will confer upon the injured person as a means of making him financially whole. No award can be sustained unless it stands the test of reasonableness in the light of its over-all effect."

This is a good statement of a sound principle. Let us examine the overall reasonableness of the verdict. In so far as the loss of earning capacity of the plaintiff is concerned, the evidence shows that he tried several forms of employment since his release from the naval service, but was unable to find a satisfactory type of work in which he could engage with his disability. But the doctors testified, and plain common sense supports the conclusion, that there are many forms of employment in which plaintiff could profitably engage. He has had business college training. He could perform office work of various types and thus earn at least the $1.65 an hour he earned as a sander. While it is true, as urged by plaintiff's counsel, that plaintiff was without regular employment for 14 months following his release from naval service until the time of trial, and suffered some loss thereby, it is evident that his injuries have repaired to the point where he could now secure gainful employment at a reasonable wage within his ability to perform.

Thus the sum of $55,000 for the loss of past and future earning capacity as suggested by plaintiff's counsel's computation, if that or a large fraction of it was followed by the jury, is patently excessive and would result in unjust enrichment.

As to the pain and suffering, it is beyond question that plaintiff has suffered much, and that he will be subject to some

discomfiture the rest of his life. But, of the suggested sum of $151,000 for past and future pain and suffering, the jury apparently awarded about three-fourths of it, or $113,000. This shocks the conscience.

■ The total verdict of $175,956 is so grossly excessive as to be "monstrous," to use a term expressing a standard of excess employed by the Supreme Court of the United States in the case of Affolder v. New York, C. & St. L. Ry. Co., 1950, 339 U.S. 96, 101, 70 S.Ct. 509, 511, 94 L.Ed. 683, and likewise followed in several recent decisions of the Eight Circuit Court of Appeals. Missouri K.-T.-R. Co. of Texas v. Ridgway, 1951, 191 F.2d 363; Glendenning Motorways v. Anderson, 8 Cir., 1954, 213 F.2d 432.

The verdict here is for ten times the maximum amount that could be awarded for death under the Minnesota Wrongful Death Statute. M.S.A. § 573.02. Court attachés of many years service in this district state that the verdict is the largest one returned in their memories.

■ The subject of excessive verdicts has been one of great concern to the courts in recent years and the maintenance of verdicts at a reasonable level is essential to the systematic functioning of our economic and business system. Distorted figures, if persistently reached in jury verdicts, will result in grave maladjustments and gross injustices. Plaintiff argues that such "pseudo-economic" considerations have no place in a court decision. The Court feels otherwise. Judicial decisions must be rendered with a consciousness of all aspects of our society. Our law has been evolved for the purpose of regulating society.

In an effort to find some standard of comparison in the decided cases, the Court has examined the decisions of recent years in the Federal Courts and in the Supreme Court of Minnesota.

The cases examined fix a pattern of an attempt by the courts in recent years to curb excessive verdicts, but it is almost impossible, from an examination of them, to determine a standard which can be of benefit to the trial judge in either granting a new trial or in directing the remission of a portion of an excessive verdict as an alternative to the granting of a new trial. Each case must stand on its own peculiar facts.

Two recent decisions of the Supreme Court of Minnesota capably deal with the problem and reach sensible conclusions. In the case of Hallada v. Great Northern Ry., 69 N.W.2d 673, decided Feb. 25, 1955, the Minnesota Supreme Court granted a new trial contingent upon the plaintiff filing a written consent to the reduction of a verdict from $170,154.81 to $105,000. In that case the plaintiff was a 30-year-old brakeman whose average wage was $450 a month, who suffered the loss of his right arm, atrophy of his right chest and shoulder muscles, and a mild compressed fracture of his eighth thoracic vertebra.

In Ahlstrom v. Minneapolis, St. P. & Sault St. Marie Ry. Co., 68 N.W.2d 873, decided Feb. 18, 1955, the Supreme Court of Minnesota granted a new trial unless the plaintiff consented to a reduction of the jury verdict from $275,000 to $175,000. The plaintiff there was a 26-year-old man who suffered complete motor and sensory paralysis from the waist down, but who had never earned more than $500 in any single year of employment, who had an eighth grade education, no special trade or skill and limited occupational experience, and who had never held a job for any reasonable length of time since leaving school.

It is apparent to the Court that the jury here committed grave error in subscribing, even in part, to the mathematical computations proposed for use in determining damages without giving reasoned thought to either the incidents composing the elements of damages in each category or the overall reasonableness of the total damages awarded. The verdict must have been the result of pity and sympathy for the plaintiff. Nothing else explains its inordinate size.

A new trial must be granted and I have been in a quandary as to whether I have the authority to make the granting thereof conditional upon a remittitur of the excessive portion of the verdict. After reading the cases I am satisfied that the entire verdict is vitiated and that it cannot be cured by a remittitur. Ford Motor Co. v. Mahone, 4 Cir., 1953, 205 F.2d 267; Brabham v. State of Mississippi, 5 Cir., 1938, 96 F.2d 210; National Surety Co. v. Jean, 6 Cir., 1932, 61 F.2d 197; Minneapolis, St. P. & S. S. M. Ry. Co. v. Moquin, 1931, 283 U.S. 520, 51 S.Ct. 501, 75 L.Ed. 1243.

A new trial is ordered.